Douglas C Emhoff (SBN 151049)
   Email: demhoff@venable.com
Tamany Vinson Bentz (SBN 258600)
   Email: tbentz@venable.com
Schuyler B. Sorosky (Cal Bar No. 265367)
   Email: sbsorosky@venable.com
VENABLE LLP
2049 Century Park East, Suite 2100
Los Angeles, CA  90067
Telephone:  (310) 229-9900
Facsimile:   (310) 229-9901

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUKIN MEDIA, INC., a California corporation,<br><br>                              Plaintiff,<br><br>                    v.<br><br>ZOOMIN.TV,  a Dutch company,<br><br>                              Defendant. | CASE NO. 15-CV-7158-GW-FFM<br><br>*Hon. George H. Wu*<br><br>**PLAINTIFF JUKIN MEDIA, INC.'S OPPOSITION TO MOTION TO DISMISS**<br><br>Date:          December 14, 2015<br>Time:         8:30 a.m.<br>Location:    Courtroom 10 |

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

10316138-v1

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ...................................................................... 1

II.  STATEMENT OF FACTS ........................................................ 2

    A.   Background............................................................................ 2

    B.   Zoomin's "Forum-Related" Contacts..................................... 3

    C.   Service of Process.................................................................. 5

III. ARGUMENT ............................................................................ 5

    A.   Zoomin Is Subject to Specific Personal Jurisdiction............... 5

    B.   Zoomin Purposely Directed Its Activities Toward California .......... 6

        1.   Zoomin Committed an Intentional Act................................. 6

        2.   Zoomin's Conduct was Expressly Aimed at California .......... 7

        3.   Zoomin caused harm it knows is likely to be suffered in the forum state............................................................. 10

    C.   Jukin's Claim Arises Out of Zoomin's Forum-Related Activities............................................................................ 11

    D.   The Exercise of Jurisdiction is Reasonable.......................... 12

IV.  SERVICE WAS PROPER.......................................................... 15

    A.   Matt Slan was Personally Served with Process..................... 15

    B.   Serving Matt J. Slan was Appropriate.................................. 15

V.   CONCLUSION......................................................................... 17

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

PLAINTIFF JUKIN MEDIA, INC.'S OPPOSITION TO MOTION TO DISMISS

10316138-v1

# **TABLE OF AUTHORITIES**

**Page**

### Cases

*AirWair Int'l Ltd. v. Schultz*, 73 F. Supp. 3d 1225, 1235 (N.D. Cal. 2014) ..........................8, 12

*Allphin v. Peter K. Fitness, LLC*, No. 13-cv-01338-BLF, 2014 U.S. Dist. LEXIS 89395, at *13, 2014 WL 2961088 (N.D. Cal. June 30, 2014) ....................................................17

*Aweida Arts, Inc. v. Pure Glass Distrib., Inc.*, No. C14-757RAJ, 2015 U.S. Dist. LEXIS 68537, at *15 (W.D. Wash. May 27, 2015)..................................................................11, 12

*Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995)...................................................6, 12, 13

*Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1129 (9th Cir. 2010)...............7

*Burda Media, Inc. v. Viertel*, 417 F.3d 292, 302-03(2d Cir. 2005) ........................................15

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985) ........................................6, 12

*Calder v. Jones*, 465 U.S. 783 (1984)...........................................................................................6

*Dahdoul Textiles, Inc. v. Zinatex Imps., Inc.*, No. 2:15-cv-04011-ODW(ASx), 2015 U.S. Dist. LEXIS 113469, at *5-6 (C.D. Cal. Aug. 25, 2015).............................................8

*DFSB Kollective Co., Ltd. v. Tran*, No. 11-CV-01049-LHK, 2011 U.S. Dist. LEXIS 147538, at *13 (N.D. Cal. Dec. 21, 2011) ....................................................................14

*Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 688 (9th Cir. 1988) ..............................................................................................................16, 17

*Directv, Inc. v. EQ Stuff, Inc.*, 207 F. Supp. 2d 1077, 1081 (C.D. Cal. 2002)..........................12

*Dole Food Co. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002)...............................6, 10, 13

*Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1333 (9th Cir. 1984).......................................13

*International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) ............................................15

*Mavrix Photo, Inc. v. Brand Technologies, Inc.*, 647 F3d 1218, 1228 (9th Cir. 2011)....6, 10, 11

*Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir. 1998)...................................14

*Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1158 (9th Cir. 2006) ............................................9

*Rio Props. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002).......................................6

*S.E.C. v. Internet Sols. for Bus. Inc.*, 509 F.3d 1161, 1166 (9th Cir. 2007) ............................15

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004)....................6, 11

*Third Estate LLC v. Cultevation, Ltd.*, No. 14-05125 MWF(JPRx), 2015 U.S. Dist. LEXIS 145107, at *10 (C.D. Cal. Oct. 23, 2015)............................................................8

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

ii

*Walden v. Fiore*, 134 S. Ct. 1115 (2014) ...........................................................................8, 9

*Washington Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 675 (9th Cir. 2012)7, 8, 11, 12

*World-Wide Volkswagen Corp.v. Woodson*, 444 U.S. 286, 297 (1980) .....................................11

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'antisemitisme*, 433 F.3d 1199, 1205-06
    (9th Cir. 2006) (*per curiam*) .........................................................................................5

**Rules**

Fed. R. Civ. P. 4 ........................................................................................................16

**VENABLE LLP**
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

iii

10316138-v1

1    Plaintiff Jukin Media, Inc. ("Plaintiff" or "Jukin") submits this memorandum

2    of law in opposition to Defendant Zoomin.TV's ("Defendant" or "Zoomin")

3    motion to dismiss (the "Motion").

4    **I.    INTRODUCTION**

5    Zoomin's motion relies upon a series of false statements that find no support

6    in the facts.  The facts instead reveal that (1) this court has specific personal

7    jurisdiction over Zoomin; and (2) Zoomin was personally served with process.

8    Zoomin's motion denies it had *any* knowledge of the alleged infringement

9    prior to the filing of this lawsuit.  Mot. at 7.  Yet, Zoomin acknowledged that it

10   infringed Jukin's copyrighted videos ("Jukin Original Videos") in documented

11   email correspondence.  *See* Declaration of Cameron Saless ("Saless Decl."), ¶ 8,

12   Ex. A.  As the email correspondence shows, Jukin spent significant time trying to

13   get Zoomin to address the infringements to avoid litigation and Zoomin repeatedly

14   refused.  *Id.*

15   Zoomin's motion also claims it "does not engage in business activities in the

16   U.S."  Mot. at 2.  Zoomin's corporate website, and various digital media

17   publications, however, acknowledge that Zoomin maintains offices in Los

18   Angeles, California, and Miami, Florida.  *See* Declaration of Tamany Vinson

19   Bentz ("Bentz Decl."), ¶ 3, Exs. A.  One such publication reveals that Jukin

20   coordinates business development, sales, and marketing, for the Western and

21   Midwestern United States from its Los Angeles office.  *Id.*, Ex. E.  Zoomin further

22   enjoys partnerships with California-based companies Yahoo! and YouTube, and

23   North America represents 18% of Zoomin's web audience, 11% of Zoomin's

24   mobile audience, and Zoomin characterizes the United States as a "key market"

25   responsible for 420 million monthly views.  Zoomin has also visited Jukin's Los

26   Angeles office to discuss terms for a business relationship.  Compl., ¶ 17; Saless

27   Decl., ¶ 5.  Zoomin does not address any of these issues in its motion and instead

28   simply relies on its conclusory false statement.

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

1

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

1    Zoomin contends that it was not properly served because Matt J. Slan, who

2    received service of process, is not permitted to receive service of process on behalf

3    of Zoomin and is merely a "free lance consultant." Mot. at 13. Zoomin's corporate

4    website, however, reveals that Mr. Slan is Zoomin's United States Vice-President

5    of Sales and Business Development. *See* Bentz Decl. ¶ 4, Ex. B. Online digital

6    media news outlets report the same. *Id.*, Exs. C-E. Under the circumstances,

7    service of process was properly executed because, regardless of whether or not Mr.

8    Slan is a managing or general agent of Zoomin, it is fair, reasonable, and just to

9    imply that Mr. Slan had authority to receive service due to Zoomin's public

10    representations about Mr. Slan's authority and role at the company. In fact, Mr.

11    Slan provided notice of the lawsuit to other officers at Zoomin. Document 12-3,

12    Declaration of Matt Slan at ¶ 6.

13    Zoomin also claims it was not properly served because papers were left with

14    a general receptionist at leased office space. Mot. at 13. In contrast, the process

15    server who served Slan with process acknowledged, in a sworn affidavit, that he

16    personally served Slan. The process server further confirmed that the individual

17    served matched the picture of Mr. Slan that is on Zoomin's website.

18    **II.    STATEMENT OF FACTS**

19         **A.    <u>Background</u>**

20    Jukin is a California corporation that primarily engages in the licensing and

21    acquisition of short-form videos in various commercial applications. Complaint

22    ("Compl.")(Dkt. 1), ¶ 11. Jukin also monetizes videos it acquires via broadcast on

23    Jukin's own branded YouTube channels, on several of its websites including

24    www.JukinVideo.com, and through other strategic partnerships. *Id.* ¶ 12. Jukin

25    invests in substantial research and analytical efforts to discover videos that it

26    believes may be interesting to the public. *Id.* ¶ 11.

27    Initially, both Jukin and Zoomin considered a relationship under which

28    Zoomin would distribute and monetize Jukin content on a non-exclusive basis

PLAINTIFF JUKIN MEDIA, INC.'S OPPOSITION TO MOTION TO DISMISS

10316138-v1

through Zoomin's channels of distribution. Saless Decl., ¶ 2. Zoomin representatives even visited Jukin's Los Angeles headquarters to engage in business discussions. Compl., ¶ 17; Saless Decl., ¶ 5. During the course of their courtship, Jukin became aware that many of the Jukin Original Videos were showing up on various Zoomin channels of distribution. Saless Decl., ¶ 6. Email correspondence between several Jukin executives and Zoomin's CEO, Jan Riemens, indicates that Riemens (1) was aware of the infringement; and (2) intended to take affirmative steps to remove infringing content. *Id.*, ¶ 8, Ex. A. Over time, Riemens correspondence became increasingly hostile, and eventually, Riemens emphatically expressed that Zoomin would not remove any infringing content. *Id.* As a result, Jukin had no choice but to file the present action.

Due to Zoomin's continued use of the thirty-four copyrighted videos, Jukin has lost licensing fees that Zoomin—or third parties—should have paid for use of the videos, as well as the ability to monetize the videos through ad placements. Compl., ¶ 130. Jukin is also losing out on the ability to capture potential new viewers, who lose incentive to visit Jukin's websites, after they watch the Jukin Original Videos on Zoomin's channels of distribution. *Id.* Further, Zoomin's actions damage Jukin's potential relationship with Zoomin's partners. If, for example, a video-sharing website is already receiving Jukin Original Videos via Zoomin, it has no incentive to pay Jukin.

**B.   Zoomin's "Forum-Related" Contacts**

Zoomin routinely republishes Jukin Original Videos on Zoomin-affiliated websites, often citing infringing YouTube accounts as the video credit. Compl., ¶¶ 15-20. When Jukin approached Zoomin regarding Zoomin's willful infringement of Jukin's copyrights, Jukin was met with flippant answers from Jan Riemens, Zoomin's CEO, or no response at all. Saless Decl., ¶ 8, Ex. A. Despite documented email correspondence between Jukin and Riemens, Riemens maintains that Zoomin "never received notice of the alleged infringement" prior to

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

1  Zoomin being named a party in the instant action.  Mot. at 7; Declaration of Jan

2  Riemens ("Riemens Decl."), ¶ 10.  Zoomin continues to publish Jukin Original

3  Videos on Zoomin-affiliated websites.

4         Aside from Zoomin's willful infringement of the copyrights of Jukin, a

5  California corporation, Zoomin maintains other significant contacts in this State.

6  Zoomin's corporate website makes clear that Zoomin has an office in Los Angeles.

7  Bentz Decl., ¶ 3, Ex. A.   Various digital media trade publications, readily

8  available online, reported Zoomin's U.S. expansion, and further explain that

9  Zoomin's Los Angeles office is responsible for business development, sales, and

10  marketing, in the Western and Midwestern United States.  Bentz Decl., ¶¶ 7-9, Exs.

11  E-G.   These publications identify the following employees of Zoomin's Los

12  Angeles office: Matt J. Slan, Vice President of Sales and Business Development;

13  and Tina Salem, United States Advertising Sales.  *Id*.  One such publication

14  indicates that Zoomin plans to grow its California office.  *Id.*, Ex. G.  Zoomin has

15  also visited Jukin's Los Angeles office to discuss partnership terms.  Compl., ¶ 17;

16  Saless Decl., ¶ 5.

17         In addition, Zoomin's publically accessible Media Kit, made available on

18  Zoomin's corporate website, indicates that among other publishers of web content,

19  Zoomin partners with both Yahoo! and YouTube, which are both headquartered in

20  California.  Bentz Decl., ¶ 6, Ex. D.  Similar marketing material made available on

21  Zoomin's corporate website indicates that North America represents 18% of

22  Zoomin's web audience, 11% of Zoomin's mobile audience, and that the United

23  States is a "key market" responsible for 420 million monthly views.  *Id.*, Ex. C.

24         Finally, Zoomin actively recruits "freelance video journalists" in the United

25  States responsible for submitting online videos to Zoomin.  Bentz Decl., ¶ 10.  A

26  cursory examination of the business-oriented social networking website LinkedIn

27  illustrates that of the "top 8 Video Journalist profiles at Zoomin.tv," one such video

28  journalist is based out of Los Angeles.  *Id.*, Ex. F.

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

4

## C.    Service of Process

Zoomin's corporate website plainly states that one of its offices is located at 1100 Glendon Avenue, Los Angeles, CA 90024. Bentz Decl., ¶ 3, Ex. A.  A receptionist at this location identified Matt J. Slan as the Zoomin person in Los Angeles. *Id*. In several publically accessible websites, including Zoomin's corporate website, Mr. Slan is listed as an officer, and specifically the Vice-President of Sales and Business Development in the United States. *Id*., Exs. C-F. The Zoomin corporate website includes a photograph of Mr. Slan. *Id*., Ex. B.

Jukin hired a reputable process server who personally served Slan with process.  Document 10.  In a sworn Notice of Service, process server Alan Juarez explained that he personally served Matt Slan, Zoomin's U.S. Vice-President of Sales and Business Development, on September 30, 2015 at 9:35 a.m. *Id*.  Mr. Suarez further recounted, in his confirmation to Jukin's counsel, that he had a photograph of Slan, and the person served matched the photo.  Bentz Decl. at ¶12, Ex. I.  Upon receiving the summons and complaint, Slan timely mailed a copy of the papers to Zoomin's headquarters in the Netherlands.  Slan Decl., ¶ 6.

## III.    ARGUMENT

### A.    Zoomin Is Subject to Specific Personal Jurisdiction

The facts as alleged and sworn in this case establish this Court may exercise specific personal jurisdiction over Zoomin.  The Ninth Circuit analyzes specific jurisdiction according to a three-prong test: (1) whether the non-resident defendant "purposefully direct[ed] his activities or consummate[d] some transaction" with the forum state, or otherwise performed some act by which the defendant "purposefully avail[ed] himself of the privilege of conducting activities in the forum;" (2) whether the claim at issue "arises out of or relates to the defendant's forum-related activities;" and (3) whether the exercise of jurisdiction is reasonable. *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'antisemitisme*, 433 F.3d 1199, 1205-06 (9th Cir. 2006) (*per curiam*) (citing *Schwarzenegger v. Fred Martin*

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

1   *Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004)).

2        The Plaintiff has the burden of establishing the first two prongs of the

3   analysis.  Where, as here, the court does not hold an evidentiary hearing, the

4   plaintiff meets his burden by making only "a *prima facie* showing of jurisdiction to

5   avoid the defendant's motion to dismiss."  *Rio Props. v. Rio Int'l Interlink*, 284

6   F.3d 1007, 1019 (9th Cir. 2002).  That is, plaintiff "need only demonstrate facts

7   that *if true* would support jurisdiction over the defendant.  *Ballard v. Savage*, 65

8   F.3d 1495, 1498 (9th Cir. 1995) (emphasis added).  In this regard, "uncontroverted

9   allegations in the complaint must be taken as true," and "[c]onflicts between

10  parties over statements contained in affidavits must be resolved in the plaintiff's

11  favor."  *Dole Food Co. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002).  Once the

12  plaintiff establishes the first two elements, the burden shifts to the defendant to

13  present a "compelling case" that the exercise of jurisdiction would not be

14  reasonable.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985).

15       **B.    Zoomin Purposely Directed Its Activities Toward California**

16       In cases involving tortious conduct, the Ninth Circuit typically employs an

17  "effects test" for purposeful direction analysis.  *Mavrix Photo, Inc. v. Brand*

18  *Technologies, Inc.*, 647 F3d 1218, 1228 (9th Cir. 2011).  This "effects test," based

19  on *Calder v. Jones*, 465 U.S. 783 (1984), requires that the nonresident defendant

20  (1) commit an intentional act; (2) that was expressly aimed at the forum state; (3)

21  and caused harm that the nonresident defendant knew would likely be suffered in

22  the forum state.  *Mavrix Photo*, 647 F.3d at 1228.

23            1.    Zoomin Committed an Intentional Act

24       In *Mavrix*, the Ninth Circuit summarily disposed of the "intentional act"

25  requirement in the copyright infringement action because there was "no question

26  that [defendant] acted intentionally when it reposted infringing works on its

27  website."  *Id.* at 1229.  Similarly, in *Washington Shoe Co. v. A-Z Sporting Goods*

28  *Inc.*, the Ninth Circuit held that a non-resident defendant acted intentionally when

PLAINTIFF JUKIN MEDIA, INC.'S OPPOSITION TO MOTION TO DISMISS

1  it continued to engage in copyright infringement even after it received notice of the

2  infringement from the copyright holder.  704 F.3d 668, 675 (9th Cir. 2012).

3       Here, Jan Riemens, Zoomin's CEO, was expressly notified of the existence

4  of Jukin's copyrighted material on Zoomin's website via email.  Saless Decl., ¶¶ 7-

5  8, Ex. A.  In fact, Riemens responded to this notification with an email stating that

6  he would investigate the matter personally.  *Id.* ¶8, Ex. A.  These emails are in

7  direct contradiction to Zoomin's contention that it never received notice of the

8  infringement prior to the commencement of this action.  Mot. at 7; Riemens Decl.,

9  ¶ 10.  In addition to the specific notice Jukin provided, many of the infringed

10  videos contained licensing information in the description of the video on YouTube,

11  e.g. "Jukin Media Verified (Original) *For licensing/permission to use: Contact:

12  licensing@jukinmedia.com."  Compl., ¶ 20.  The posting of this information alone

13  would have been sufficient to put Zoomin on notice of infringing use.  Zoomin's

14  argument that it did not act intentionally is therefore meritless.

15       2.    Zoomin's Conduct was Expressly Aimed at California

16       "The second part of the *Calder*-effects test requires that the defendant's

17  conduct be expressly aimed at the forum."  *Brayton Purcell LLP v. Recordon &*

18  *Recordon*, 606 F.3d 1124, 1129 (9th Cir. 2010).  Courts have emphasized that

19  "something more than foreseeability" is required in order to justify the assertion of

20  personal jurisdiction, and that "something more" has come to mean conduct

21  expressly aimed at the forum.  *Id.*  The Ninth Circuit recognizes that a defendant's

22  "willful infringement of [a forum-resident's] copyright, and its knowledge of both

23  the existence of the copyright and the forum of the copyright holder, is sufficient

24  'individualized targeting' to establish the 'something more' necessary to satisfy the

25  express aiming requirement."  *Wash. Shoe Co.*, 704 F.3d 668, 678-79.

26       In *Washington Shoe*, the plaintiff, a Washington-based company, brought

27  suit in a Washington district court after discovering that the defendant, with whom

28  plaintiff had a prior business relationship, had been selling plaintiff's copyrighted

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

PLAINTIFF JUKIN MEDIA, INC.'S OPPOSITION TO MOTION TO DISMISS

10316138-v1

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

boot designs in Arkansas. 704 F.3d at 671. As is the case here, the plaintiff notified the defendant of the alleged infringement. *Id.* The Ninth Circuit found personal jurisdiction over the defendant, holding that the defendant "expressly aimed" its conduct at Washington because the defendant "*knew* that its intentional acts would impact [defendant's] copyright by virtue of the cease-and-desist letter it had received. *Id.* at 678; *see e.g., AirWair Int'l Ltd. v. Schultz*, 73 F. Supp. 3d 1225, 1235 (N.D. Cal. 2014) (express aiming requirement satisfied after defendant was told that it its continued trademark infringement would draw legal attention from plaintiff); *Third Estate LLC v. Cultevation, Ltd.*, No. 14-05125 MWF(JPRx), 2015 U.S. Dist. LEXIS 145107, at *10 (C.D. Cal. Oct. 23, 2015) (holding that "express aiming" was satisfied when the out of state defendant received notification of alleged trademark infringement); *Dahdoul Textiles, Inc. v. Zinatex Imps., Inc.*, No. 2:15-cv-04011-ODW(ASx), 2015 U.S. Dist. LEXIS 113469, at *5-6 (C.D. Cal. Aug. 25, 2015) (holding that defendants expressly aimed their conduct at the forum state by willfully infringing the copyright of a California corporation after being informed of the copyright by the manufacturer, and after being sent a cease-and-desist letter by the plaintiffs).

The Supreme Court recently addressed the express aiming issue in *Walden v. Fiore*, 134 S. Ct. 1115 (2014). There, Nevada residents brought an action in a Nevada district against a DEA resident for alleged Fourth Amendment violations that occurred in Georgia. *Id.* at 1119-20. The Supreme Court held that the district court could not exercise personal jurisdiction over the defendant because, even though plaintiffs were from Nevada, none of the challenged conduct had anything to do with Nevada itself. *Id.* at 1125.

The *Walden* court contrasted the facts before it with *Calder*, which involved a claim for libel against out of state defendants. *Id.* at 1124. The Court reasoned that unlike a Fourth Amendment violation, the reputation-based 'effects' of the alleged libel in *Calder* connected the defendants to California, not just to the

10316138-v1

plaintiff. *Id.* at 1124-25. The "crux of *Calder*," according to the Court, was that the reputational injury caused by the defendants would not have occurred but for the fact that the defendants wrote an article for publication in California that was read by a large number of California citizens. *Id.*

Like the *Walden* court, the Ninth Circuit, in *Pebble Beach Co. v. Caddy*, similarly found that defendant did not aim its tortious conduct at the forum state. 453 F.3d 1151, 1158 (9th Cir. 2006). In *Pebble Beach*, a famous California golf resort sued the defendant for intentional trademark infringement and dilution for operating a bed and breakfast operating in England called "Pebble Beach." *Id.* at 1153. Since plaintiff, in its complaint, provided no facts suggesting that defendant knew his intentional act would have an impact in California, the court held that personal jurisdiction was not proper regardless of the "foreseeable effects" defendant's conduct cause in the forum. *Id.* at 1158.

In the present action, the facts are much more analogous to *Washington Shoe* and *Calder* then to *Walden* or *Pebble Beach*. The Complaint clearly establishes that Zoomin knew that Jukin is a forum resident because Jukin alleges that Defendant visited Jukin's Los Angeles headquarters. (Comp. ¶ 17). The Complaint similarly alleges that Zoomin had knowledge of the alleged infringement. *Id.* Despite Zoomin's denial of any knowledge of Jukin's copyrighted works, Zoomin knew that its alleged unlawful conduct would affect California after Riemens received repeated emails notifying him of the alleged infringement. Saless Decl., ¶¶ 7-8, Ex. A. Like the continued infringement perpetrated by the defendants in *Washington Shoe* following receipt of cease and desist letters, Zoomin's continued infringement after receiving notice of its infringement, is sufficient "individualized targeting" to satisfy the "express aiming requirement." Unlike in *Pebble Beach*, the facts and allegations here do not merely show *foreseeable* impact on the forum state, they show a *knowing* one.

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

Further, unlike the claim in *Walden*, copyright infringement of the Jukin Original Videos does not merely affect Jukin personally, but broadly affects California.  Like the reputation-based libel claim in *Calder*, copyright infringement causes Jukin to suffer similar reputational harm in this State, lost revenue derived from licensing fees, and monetization loss stemming from YouTube viewers diverted to Defendant's site.  Compl., ¶ 137.

If anything, the facts here support jurisdiction even more than they did in *Calder* because Zoomin cannot be characterized as merely an out of state defendant.  Zoomin's Los Angeles office serves as the headquarters of its U.S. sales, business development, and marketing departments; Zoomin maintains partnerships with California-based video streaming companies Yahoo! and YouTube; and it utilizes Los Angeles-based freelance video journalists.  Because of Zoomin's close ties with California, Zoomin is able to obtain a competitive advantage in this State while misappropriating the copyrighted works of Jukin.  It seems wholly unreasonable that Zoomin can have this presence in California, knowingly steal Jukin's intellectual property, and still claim that Jukin must go to the Netherlands to enforce United States copyrights.

Accordingly, Jukin's allegations regarding Zoomin's commercial activities in California, coupled with Zoomin's actual knowledge of the effects of its actions in California sufficiently establish that Zoomin aimed its actions at this state.

3.     Zoomin Caused Harm it Knows is Likely to be Suffered in the Forum State

Zoomin caused harm that it knows is likely to be suffered in the forum state.  In determining the location of a corporation's injury, Ninth Circuit precedent recognizes that a corporation can suffer harm both where the bad acts occurred and where the corporation has its principle place of business.  *Mavrix*, 647 F.3d at 1231 (citing *Dole Food Co.*, 303 F.3d at 1113).  Further, "[t]he economic loss caused by the intentional infringement of a plaintiff's copyright is foreseeable.  *Mavrix*, 647

V E N A B L E   L L P
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

PLAINTIFF JUKIN MEDIA, INC.'S OPPOSITION TO MOTION TO DISMISS

10316138-v1

1   F.3d at 1231.

2       Here, it is foreseeable that that the economic loss to Plaintiff would be

3   inflicted in California, the site of Plaintiff's principal place of business.  Moreover,

4   Zoomin knew that its intentional acts would have an impact on Plaintiff and it

5   knew Plaintiff had its headquarters in the state of California.  Compl., ¶ 17.

6   Zoomin knew that the impact of its willful infringement of Plaintiff's copyright

7   would cause harm likely to be suffered in the forum.  As a consequence, Zoomin

8   can "reasonably anticipate being haled into court" in California.  *World-Wide*

9   *Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

10       **C.**    **Jukin's Claim Arises Out of Zoomin's Forum-Related Activities**

11       As Zoomin correctly points out, the second prong of the specific jurisdiction

12   test is satisfied if the plaintiff would not have been injured "but for" the

13   defendant's forum related activities.  *See Schwarzenegger*, 374 F.3d at 802.  In this

14   case, Zoomin's knowing infringement was California-related, even if it did not

15   occur entirely—or even primarily—in California.  In its Motion, Zoomin attempts

16   to mitigate the extent to which it is inexorably tied with the State of California

17   Mot. at 10.  But, the suit need not arise from Zoomin's activities in California.  *See*

18   *Aweida Arts, Inc. v. Pure Glass Distrib., Inc.*, No. C14-757RAJ, 2015 U.S. Dist.

19   LEXIS 68537, at *15 (W.D. Wash. May 27, 2015).  Instead, the second prong of

20   the personal jurisdiction analysis requires only "forum-related" activity.

21   *Schwarzenegger*, 374 F.3d at 802.

22       As explained in *Washington Shoe*, a court "may exercise personal

23   jurisdiction over a defendant who engages in an intentional act that causes harm in

24   the forum state, even if that act takes place outside the forum state."  704 F.3d at

25   673.  Here, unlike in *Washington Shoe*, Zoomin has engaged in substantial conduct

26   within the state of California via its Los Angeles office where its U.S. sales,

27   business development, and marketing departments operate; its partnerships with

28   California-based video streaming companies Yahoo! and YouTube; and its use of

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

1   Los Angeles-based freelance video journalists.  But even without these myriad

2   contacts, Jukin's suit arises from allegations of Zoomin's forum-related activity—

3   knowing and intentional infringement of a California corporation's copyrights for

4   the purpose of competing with that company in California.[1]  *Aweida Arts*, 2015

5   U.S. Dist. LEXIS 68537, at \*15; *AirWair*, 73 F. Supp. at 1238 (holding that but for

6   out of state defendant's alleged infringement, plaintiff would not have endured

7   harm).

8   **D.    The Exercise of Jurisdiction is Reasonable**

9   Since Plaintiff has borne its duty of making a *prima facie* showing of

10   Zoomin's "minimum contacts" with California, the burden shifts to Zoomin to

11   "present a *compelling case* that the presence of some other considerations would

12   render jurisdiction unreasonable." *Ballard*, 65 F.3d at 1500 (quoting *Burger King*,

13   471 U.S. at 477).  Courts in the Ninth Circuit evaluate seven factors to determine

14   the reasonableness of a forum's exercise of jurisdiction: (1) the extent of

15   purposeful interjection; (2) the burden on the defendant of defending in the forum

16   state; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the

17   forum state's interest in the dispute; (5) the most efficient forum for judicial

18   resolution of the dispute; (6) the importance of the forum to the plaintiff's interest

19   in convenient and effective relief; and (7) the existence of an alternative forum.

20   *Directv, Inc. v. EQ Stuff, Inc.*, 207 F. Supp. 2d 1077, 1081 (C.D. Cal. 2002)

21   (quoting *Ballard*, 65 F.3d at 1500).  Zoomin has not carried the "heavy burden of

22   rebutting the strong presumption in favor of jurisdiction." *Ballard*, 65 F.3d at

23

24   _____

25   [1] The *Washington Shoe* court considered only the purposeful direction prong of the three-part test for personal jurisdiction.  704 F. 3d at 672 ("Only the first prong is at issue in this case.").  "Nonetheless, its holding that conduct outside the forum

26   state constitutes purposeful direction would be meaningless if the defendant could avoid the jurisdictional consequences of that action merely by noting that it

27   occurred outside the forum state." *Aweida Arts*, 2015 U.S. Dist. LEXIS 68537, at \*15 n.1.

28

10316138-v1

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

1500.  This is because it cannot, as the great majority of these factors weigh in favor of the Court's retention of jurisdiction.

First, despite Zoomin's contentions to the contrary, Zoomin has most certainly interjected itself into California.  Zoomin has engaged in substantial conduct within the state of California via its Los Angeles office where its U.S. sales, business development, and marketing departments operate; its partnerships with California-based video streaming companies Yahoo! and YouTube; and its use of Los Angeles-based freelance video journalists.

Second, Zoomin claims that litigating this action in the United States would pose "a great burden" to Zoomin because individuals with knowledge reside in the Netherlands, and do not speak English as a primary language.  But this contention finds no support in the facts.  Email correspondence between Jukin and Zoomin CEO Jan Riemens reveals that Riemens, as head of the Company, speaks fluent English and travels to the United States frequently for business.  *See* Saless Decl., ¶¶ 2-5, Ex. A.  See *Dole Food Co.*, 303 F.3d at 1115 ("several facts mitigate the burden in this case. [Defendants] are able to speak, read, and write English with ease.").  Indeed, Mr. Reimans met with Jukin in Jukin's Los Angeles office and the entire meeting was conducted in English without a translator.  *See* Saless Decl., ¶¶ 4-5.  The fact that it would be expensive and inconvenient for Zoomin to defend themselves in this forum is not dispositive.  See *Dole Food Co.*, 303 F.3d at 1115.

Third, determining conflict with the sovereignty of a defendant's state entails an examination of the competing sovereign interests in regulating the defendant's behavior.  *Id.*  However, since sovereignty concerns inevitably arise whenever a U.S. court exercises jurisdiction over a foreign national, this factor is "by no means controlling," *Ballard*, 65 F.3d 1495, 1501 (9th Cir. 1995).  Otherwise, this factor "would always prevent suit against a foreign national in a United States court." *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1333 (9th Cir. 1984).  Here, Jukin's complaint only raises questions of U.S. copyright law, it does

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

13

10316138-v1

1    not allege any cause of action under the laws of the Netherlands, or any other

2    sovereign country.

3         Fourth, California has an interest in adjudicating disputes involving

4    defendants that "use[] California companies to perpetuate Copyright

5    infringement." *DFSB Kollective Co., Ltd. v. Tran*, No. 11-CV-01049-LHK, 2011

6    U.S. Dist. LEXIS 147538, at *13 (N.D. Cal. Dec. 21, 2011).  In addition, Jukin is a

7    tax paying entity headquartered in Los Angeles.  It avails itself of California's laws

8    and has every right to seek redress for wrongs committed against it in this State.

9         Fifth, this efficiency factor, focused on the location of the evidence and

10   witnesses "is no longer weighed heavily given the modern advances in

11   communication and transportation." *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d

12   1316, 1323 (9th Cir. 1998).  Here, Zoomin's CEO has taken advantage of these

13   advances as he travels to the United Sates for business purposes.  Saless Decl., ¶ 3.

14   Ex. A.  Moreover, Zoomin has an office in Los Angeles from which it conducts its

15   sales, business development, and marketing efforts in the State.  Bentz Decl., ¶ 3,

16   7-9, Ex. A, E-G.

17        Sixth, it is convenient for Jukin to litigate this dispute in the forum in which

18   it was harmed by defendant.  Jukin conducts no business operations in the

19   Netherlands and would be unduly damaged if it was forced to litigate this dispute

20   in a foreign jurisdiction in which it maintains no contacts.

21        Seventh, despite Zoomin's contention that Jukin should have filed this action

22   in the Netherlands, Jukin raises no claims under Dutch law.  To the contrary, all of

23   Jukin's prayers for relief arise under U.S. or California law.

24        Thus the exercise of personal jurisdiction over Zoomin in California would

25   be reasonable.

26                          *        *        *

27        By targeting a California resident as the victim in its intentional copyright

28   infringement, Zoomin purposefully directed its illegal activities toward California

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

and caused damage therein. The exercise of jurisdiction over Zoomin under these circumstances is warranted, and would not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal citations and quotation marks omitted).

## IV. SERVICE WAS PROPER

### A. Matt Slan was Personally Served with Process

The party alleging improper service of process bears a "substantial" burden to prove that he is entitled to relief. *S.E.C. v. Internet Sols. for Bus. Inc.*, 509 F.3d 1161, 1166 (9th Cir. 2007). "A signed return of service constitutes prima facie evidence of valid service which can be overcome only by strong and convincing evidence." *Id.* (internal quotations omitted).

Here, process server Alan Juarez signed a proof of service indicating that he personally served Matt Slan, Zoomin's U.S. Vice-President of Sales and Business Development, on September 30, 2015 at 9:35 a.m. Document 10. Mr. Juarez further indicated that he had a photograph of Mr. Slan, and the person served matched the photograph. Bentz Decl., Ex. I. Mr. Slan contradicts Mr. Juarez's signed proof of service with his own signed declaration that the summons and complaint was left with a general receptionist for the office building. Slan Decl., ¶ 5. Mr. Slan's declaration, contrasted with the sworn proof of service from an independent party, simply does not rise to the level of "strong and convincing evidence" necessary to rebut the presumption of valid service. *Burda Media, Inc. v. Viertel*, 417 F.3d 292, 302-03 (2d Cir. 2005) (finding that defendant received service of process where the only evidence that he did not was his own affidavit denying the receipt of summons).

### B. Serving Matt J. Slan was Appropriate

Federal Rule of Civil Procedure 4(h)(1)(B) permits for service to be performed on a domestic or foreign corporation "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

10316138-v1

1  other agent authorized by appointment or by law to receive service of process."

2  Fed. R. Civ. P. 4(h)(1)(B).  In the Ninth Circuit, "service of process is not limited

3  solely to officially designated officers, managing agents, or agents appointed by

4  law for the receipt of process." *Direct Mail Specialists, Inc. v. Eclat Computerized*

5  *Techs., Inc.*, 840 F.2d 685, 688 (9th Cir. 1988). Rather, "service can be made upon

6  a representative so integrated with the organization that he will know what to do

7  with the papers." *Id.*  "Service is sufficient when made upon an individual who

8  stands in such a position as to render it fair, reasonable and just to imply the

9  authority on his part to receive service." *Id.*

10  In *Direct Mail Specialists*, a process server left the summons and complaint

11  with the receptionist of the defendant after she stated that she was the only person

12  at the office.  840 F.2d at 687.  In holding that process was properly served, the

13  court acknowledged that (1) the receptionist, as the only employee in the office,

14  demonstrated "that more than minimal responsibility was assigned to her," and (2)

15  "actual notice" was demonstrated by the fact that the company's president

16  complained about being served the following day.  *Id.* at 689.

17  Here, Zoomin's Vice President of Sales in the United States, Mr. Slan was

18  successfully served with process at Zoomin's Los Angeles office.  Document 10.

19  For the purposes of this Motion, Zoomin contends that Mr. Slan is a "free lance

20  consultant."  Mot. at 13.  This assertion is undermined by the fact that in several

21  publically accessible websites, including Zoomin's corporate website, Mr. Slan is

22  listed as an officer, and specifically the Vice-President of Sales and Business

23  Development in the United States.  Bentz Decl., ¶ 4, Ex. B.  As the facts indicate,

24  Zoomin is publically holding out Mr. Slan as a Zoomin Vice-President for the

25  purpose of increasing its foothold in California, while simultaneously diminishing

26  his substantial role in the company in an attempt to quash service of process.

27  Zoomin cannot have it both ways.  According to online periodicals, and

28  representations Zoomin has made in its own corporate website, a reasonable person

V E N A B L E   L L P
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

1   would conclude that Mr. Slan would "know what to do with the papers." *Direct*

2   *Mail Specialists*, 840 F.2d at 688.

3        Mr. Slan's capability of accepting service is additionally supported by Mr.

4   Slan's own assertion that he "notified Zoomin.TV by emailing a copy of the papers

5   and mailing the papers to Zoomin.TV in the Netherlands." Slan Decl., ¶ 6. This

6   communication shows actual notice, and therefore makes serving Mr. Slan on

7   behalf of Zoomin both reasonable and fair. See *Allphin v. Peter K. Fitness, LLC*,

8   No. 13-cv-01338-BLF, 2014 U.S. Dist. LEXIS 89395, at *13, 2014 WL 2961088

9   (N.D. Cal. June 30, 2014).

10   **V.     CONCLUSION**

11        Based on the foregoing, Defendant's Motion should be denied in its entirety.

12

13   DATED: November 23, 2015          VENABLE LLP

14

15

16                                 By:  /s/ Tamany Vinson Bentz
                                   Douglas C Emhoff

17                                      Tamany Vinson Bentz
                                   Schuyler B. Sorosky

18                                      Attorneys for Plaintiff

19                                      JUKIN MEDIA, INC.

20

21

22

23

24

25

26

27

28

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

10316138-v1